UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Vernon G. Richardson, <br>     Plaintiff <br><br> 428 Ingraham Street NW <br> Washington, D.C. 20011 <br><br> v. <br><br> AKAL Security, Inc., <br>     Defendant <br><br> Registered Agent: <br> CT Corporation System <br> 1015 15th St. NW, Ste. 1000 <br> Washington, D.C. 20005 <br><br> AKAL Corporate Office: <br> 7 Infinity Loop <br> Espanola, New Mexico 87532 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION NO. 1:15-cv-1758 <br><br><br><br><br><br><br><br> **COMPLAINT** <br><br><br><br><br><br><br><br><br> A JURY IS DEMANDED |

**ORIGINAL COMPLAINT**

If Vernon Richardson had been judged on the quality of his work, he would not have been removed from his position as Court Security Officer protecting the judiciary of the Superior Court of the District of Columbia. Although he performed his job as a Court Security Officer with distinction, he was placed on leave without pay because of disability discrimination.

PARTIES

1. The plaintiff Vernon G. Richardson is an individual who resides in Washington, D.C.

2. The defendant AKAL Security, Inc. is a New Mexico corporation doing business in the District of Columbia, and may be served with process by serving its registered agent, CT

1

Corporation System, 1015 15th St. NW, Ste. 1000, Washington, D.C. 20005.

## JURISDICTION

3. This case is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and the District of Columbia Human Rights Act, D.C. Code § 2-1401 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFF'S CASE

5. The plaintiff, Vernon G. Richardson, was well qualified to protect the judiciary. Since July of 1994 he served as a Court Security Officer (CSO) at the District of Columbia Superior Courthouse in Washington, D.C. Like other CSOs, Mr. Richardson worked for the various companies which contracted to provide courthouse security during this twenty year period, including, most recently, the defendant AKAL Security, Inc.

6. AKAL required Mr. Richardson to submit to an annual fitness for duty examination as a condition of his employment, which he passed every year. This was consistent with his job evaluations, which were outstanding. There was never any issue whatsoever regarding Mr. Richardson's qualifications for the job, and his work performance always demonstrated his ability to perform his essential job functions. Indeed, his performance was so praiseworthy that he was promoted to the position of Lead CSO. As Lead CSO, Mr. Richardson was responsible for supervising seven other CSOs, checking CSO equipment, and producing reports, as well as performing ordinary CSO duties such as monitoring the courthouse X-ray machines.

7. All that changed on February 6, 2014. At the end of a full day of work, Mr. Richardson was pulled aside by his supervisor and told not to return to work the next day. He was told that he was being suspended for medical reasons and would be on leave without pay status until the matter was resolved. His supervisor could give him no further information, but said that Mr. Richardson could expect to receive paperwork in the mail explaining the reason for the suspension.

8. When Mr. Richardson picked up the paperwork a few days later, he learned the reason for his suspension: his diabetes. This came as a shock to him, since he had first been diagnosed with diabetes more than six years earlier and his diagnosis had never affected his ability to perform his job. AKAL had always had full knowledge of this diagnosis thanks to the annual physicals and medical histories it required. Likewise, AKAL knew that Mr. Richardson had always kept his diabetes well-controlled, first with medication alone and then with the use of insulin beginning in 2011. Despite Mr. Richardson's record of success, AKAL branded him as a danger because of his diabetes. AKAL's suspension of Mr. Richardson was in violation of the ADA and the DCHRA, as it was an adverse employment action taken purely because of Mr. Richardson's disability, diabetes, or because AKAL regarded him as having a disability. This knee-jerk reaction to Mr. Richardson's condition acted as an illegal medical qualification standard acting to screen out individuals with disabilities in violation of 42 USC 12112(b)(3).

9. Although there had been no change in Mr. Richardson's medical condition to justify his suspension, AKAL was adamant about placing him on leave without pay. It refused to reinstate him unless he provided extraordinarily detailed information about his condition and

submitted to repeated, burdensome medical tests.  Specifically, AKAL required Mr. Richardson test his glucose level six times per day for ninety days and provide it with the log of the results. It also required him to undergo two A1c tests, an eye exam, a kidney test, a treadmill cardiac stress test, an EKG, provide a food log, and provide the doctors notes taken by his personal physician over the last two years.  No justification was given for these requirements, which constituted illegal medical examinations under the ADA.  See 42 U.S.C. 12112(d)(4)(A).

10. The first item Mr. Richardson submitted to AKAL was a report from his treating physician, Dr. Nicholas Argento, dated February 20, 2014.  Dr. Argento confirmed that Mr. Richardson kept his diabetes well-controlled, that he had no problematic side-effects or reactions, and that he was fit for duty and fully able to perform his job as a CSO.  Dr. Argento also noted that AKAL had suspended Mr. Richardson even before it had received the test results it demanded, and without any report that Mr. Richardson's condition limited his ability to do the job, which the physician plainly viewed as a highly questionable action.  In spite of this report, and in direct contradiction to Dr. Argento's conclusions as treating physician, AKAL did not permit Mr. Richardson to return to work until he had completed the full months-long battery of tests it required.

11. Mr. Richardson complied with AKAL's medical examination demands even though he objected to them as unnecessary and illegal under the ADA.  Unsurprisingly, these tests simply confirmed what his treating physician had said all along: Mr. Richardson's diabetes was well-controlled, was not causing neurological, cardiological, or other side effects, and in no way affected his ability to do his job as Lead CSO.  Finally, on July 3, 2014, AKAL lifted Mr.

Richardson's suspension without pay and allowed him to return to work.

Disability Discrimination

*Count 1: Americans with Disabilities Act*

12.    The plaintiff is a qualified individual with a disability. The plaintiff performed his job as Lead Court Security Officer with distinction. Even though AKAL knew that Mr. Richardson was eminently qualified to continue working as Lead CSO, it suspended him without pay based on his disability. Mr. Richardson has an actual disability as he was assessed by Defendant. He was regarded as having a disability (based on the defendant's perception that he was substantially limited in his endocrine function) by AKAL, and was suspended for months without pay because of a record of a disability. AKAL's conduct violated the Americans with Disabilities Act, which prohibits unlawful medical examinations and discrimination in employment on the basis of disability. See 42 U.S.C. 12112(a), (d)(4)(A). AKAL could not legally require medical tests, as it did here, unless such tests are job related and justified by business necessity, which the tests required of Mr. Richardson most certainly were not. The plaintiff was a qualified individual with a disability and was discriminated against because of such disability. AKAL engaged in this discrimination maliciously or with reckless indifference to Plaintiff's federally protected rights, justifying an award of exemplary damages.

*Count 2: District of Columbia Human Rights Act*

13.    AKAL discriminated against Plaintiff in the terms and conditions of his employment on the basis of his disability, in violation of D.C. Code § 2-1402.11(a)(1). AKAL's actions have caused Plaintiff to sustain and continue to sustain direct and consequential

damages, including, but not limited to, emotional pain and suffering, mental anguish, humiliation and embarrassment, damage to his professional reputation and development, loss of future employment opportunities, and the impairment of future earning capacity, justifying an award of compensatory damages, the amount to be determined by a jury at trial. AKAL engaged in this discrimination maliciously or with reckless indifference to Plaintiff's right under the Human Rights Act to be free of disability discrimination, justifying an award of punitive damages in an amount to be determined at trial.

14. The plaintiff timely filed a charge of discrimination to challenge the disability discrimination he suffered from AKAL. He requested a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination against the defendant and such right to sue letter has been issued. Plaintiff timely files this lawsuit to vindicate his rights. Plaintiff has properly exhausted his administrative remedies.

## Damages

15. The damages suffered by the plaintiff as a result of AKAL's actions include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

16. Further, because AKAL's actions were of the sort that render the imposition of exemplary or punitive damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

**WHEREFORE**, the plaintiff asks this court to enter a judgment:

a. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the District of Columbia Human Rights Act;

b. Enjoining and permanently restraining these violations of law;

c. Directing the defendant to pay the plaintiff general and special damages according to proof at the time of trial;

d. Directing the defendant to pay plaintiff exemplary and/or punitive damages for its conduct according to proof at the time of trial;

e. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

f. Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

g. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

h. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

## JURY DEMAND

17. Plaintiff hereby demands a trial by jury on all issues.

Respectfully submitted,

/s/ John W. Griffin, Jr.
**JOHN GRIFFIN, JR.**
D.C. Bar No. 053372
Federal I.D. No. 2238
Texas Bar No. 08460300

203 North Liberty Street
Victoria, Texas  77901
(361) 573-5500
(361) 573-5040 (Fax)

**Attorney in charge for Plaintiff**

**Katherine L. Butler**
Federal I.D. No. 4734
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
(713) 526-5691 (Fax)

**David R. Cashdan**
D.C. Bar No. 051342
Cashdan & Kane PLLC
1150 Connecticut Avenue, Ste. 900
Washington, D.C. 20036-4129
(202) 862-4353
(202) 862-4331 (Fax)